No. 82-322

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

VICTOR MARVIN WILLIS,

        Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ralph T. Randono argued, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
George Schunk argued, Legal Intern, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls,
Montana

Submitted: September 12, 1983

Decided: December 13, 1983

Filed: DEC 13 1983

*Ethel M. Harrison*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Willis was convicted of sexual intercourse without consent and aggravated burglary in the District Court of Cascade County following a jury trial. The Court sentenced Willis to a term of fifteen years on each count to be served concurrently and designated Willis a nondangerous offender. Willis appeals both the convictions and the sentences. We affirm.

The rape victim was awakened in her apartment by a man with his hands around her throat at approximately 5:00 to 5:15 a.m. on December 21, 1981. When she screamed for help, the man's hands tightened around her throat and he told her to "shut up." She did not recognize his voice this first time he spoke. She attempted to scream again and her attacker again told her, this time in a different tone of voice, to "shut up." This time she immediately recognized Willis's voice and used his name, to which he did not respond. He also called her by her nickname and told her to ". . . shut up, or I'll hurt you." The victim recognized the cologne or aftershave Willis was wearing, and although the light was dim, she recognized Willis's profile by the light from a street light shining through a window. A review of the file, including the initial police reports, shows that the victim has never had any doubt regarding the identity of her attacker. There were, however, discrepancies between the victim's description of her attacker's clothing and the clothing Willis was said to have been wearing that night.

After the rape, when the victim was able to get away from Willis, she grabbed a robe and ran barefoot and screaming into the street. Still screaming, she knocked on

neighbors' doors but they did not respond. Joyce Carter, a woman who heard her screams while delivering newspapers, came to her assistance and took her to the sheriff's department.

Carter saw the attacker as he ran to his car. She observed Willis drive away in his car which she identified as a bright blue Ford small car. At the time she thought the car was either a Pinto or a Mustang from the front but not from the rear and at that time could not remember the name of the other Ford compact car. At the time of the rape, Willis owned a bright blue Ford Maverick.

From the sheriff's department, the victim was taken directly to a hospital for a rape examination. The doctor testified that the physical evidence showed that she had had sexual intercourse within the preceding twelve hours. He also noted the presence of abrasions on both sides of her neck.

Defendant Willis relied on an alibi defense at his trial. He had several witnesses who testified that he had been with them at an all-night beer party and did not leave until approximately 5:30 a.m. This testimony was impeached on rebuttal by the testimony of Officer Renman, who testified that he had interviewed the witnesses shortly after the rape and at that time they stated that the drinking party had broken up earlier. Officer Renman used his handwritten notes of these interviews to refresh his recollection during direct examination-in-chief on rebuttal. Whether these handwritten notes are subject to discovery under section 46-15-302(2), MCA, is appellant's basic issue on appeal.

Three issues are raised which we summarize as follows:

1. Did the trial court err in denying defendant's motion for a mistrial when a police officer testified at the

3

trial from notes which had not been produced in response to a motion to produce?

2. Are the notes of a police officer, taken during interviews with defense witnesses, exempt from discovery under the "prosecution work product" exception to section 46-15-302(2), MCA?

3. Must handwritten police officers' notes of the prior inconsistent statements of defense witnesses, used for impeachment, be produced as exculpatory under section 46-15-302(2), MCA?

The defendant both raises and disposes of the first issue regarding whether a mistrial should have been declared when it was discovered for the first time during trial that there were police officer's notes in existence. The record shows that defense counsel was informed of the existence of Officer Renman's personal notes during the omnibus hearing held approximately two months prior to trial. In addition, defense counsel's own motion to produce filed prior to trial specifically mentions Officer Renman's handwritten notes. Defense counsel can hardly state that he first discovered the existence of the notes at trial when they were discussed at the omnibus hearing and were later specifically identified in his motion to produce.

An examination of the relevant statute is dispositive of this appeal. That statute provides:

> "46-15-302. *Discovery of writings and objects.* In all criminal cases originally triable in the district court, the following rules shall apply:
>
> "(1) . . .
>
> "(2) Upon motion of the defendant within a reasonable time before trial, the court may, *upon a showing of good cause,* order the prosecution to produce, prior to trial

4

> at a time and place designated by the court, for inspection, photographing, or copying by the defendant designated books, statements, papers, or objects obtained from the defendant or others by the prosecution which are material, relevant, and necessary to the preparation of the defendant's case. This subsection does not apply to the work product of the prosecution, which is documents drawn up by law enforcement officials for internal communications and law enforcement officers' field notes, except that any exculpatory information contained in such documents or notes must be produced." (Emphasis added.)

We note that the statute first requires a showing of good cause before a court can order the prosecution to produce evidence.

A thorough review of the record fails to disclose any showing of good cause by defense counsel in requesting the officer's field notes. These notes were taken during interviews with defense counsel's own witnesses. He had continual access to these witnesses from the investigation stage of the matter through the final resolution. There is nothing to indicate that any of these witnesses were other than totally cooperative with defense counsel. However, even if they had been hostile or uncooperative, other forms of discovery, such as the taking of their depositions, were available to counsel. He did not avail himself of these other discovery methods. Counsel also could have reviewed the notes during trial but chose not to take advantage of this privilege. Instead, he elected to move for a mistrial but did not prevail.

Defense counsel argues, and we agree, that discovery is an important aspect of criminal procedure. He cites Williams v. Florida (1970), 399 U.S. 78, 82, 90 S.Ct. 1893, 26 L.Ed.2d 446, which states that the primary purpose of discovery is to

5

avoid a "poker game attitude" in which players enjoy an absolute right to conceal their cards until played. We agree with this statement also. However, there is no risk of concealment under the circumstances disclosed here. These were defense witnesses, not prosecution witnesses, and were clearly accessible and cooperative. All counsel had to do to discover the contents of the notes was to ask his own witnesses what they said to Officer Renman, depose him with a subpoena duces tecum, or examine the notes at the trial. None of these available remedies was utilized. There was no showing of good cause nor could there be such a showing under these circumstances.

In conclusion, we find that in order for counsel to prevail under section 46-15-302(2), MCA, there must first be a showing of good cause before the court can order production. There was no such showing here. Since there was no showing of this first requirement of good cause, we never reach the issue of the work product exclusion or the exception of exculpatory material.

We affirm.

_Frank I. Haswell_
Chief Justice

6

We concur:

_John Conway Harrison_

_L. C. Gulbrandson_

_Daniel J. Shea_

_Gene B. Daly_

_John C. Sheehy_
Justices

_Honorable J. Chan Ettien_
Honorable J. Chan Ettien, District Judge, sitting in place of Mr. Justice Frank B. Morrison, Jr.

7